The opinion of the Court was delivered by
Johnson, J.
Before I enter into the consideration of the points made on this motion, it will be necessary to take a general view of the circumstances out of which this case arose.
To worship God, after the dictates of our ^consciences, is a privilege that all men claim as a birthright from heaven. Millions have shed their blood in defence of it; and a conviction of its justness has sustained the martyr at the stake. But feeble, indeed, would be the protection of our inestimable constitution, which professes to secure to us this privilege, if a petty patrol officer was permitted to mar and disturb our devotions at his pleasure, and with impunity. The English common law held this privilege so sacred, that it would not justify one in striking even in his own defence, during worship;[1] and it is a principle so clear, that those who unlawfully disturb the devotions of a religious assembly, by any indecency or violence, may be punished by indictment, that authorities are unnecessary to support it.
The plaintiff, however, seeks security and protection for the prosecution against him, and claims to recover against the defendant, under the provisions of the acts of the Legislature, provided for the better government of slaves. It is, therefore, necessary to inquire whether these acts did authorize his conduct.
There is no question about the propriety of the policy which has been adopted, in a long series of legislation, in relation to this unfortunate class of the community, and that it daily becomes more and more necessary to keep them in proper subjection, by a strict enforcement of the laws relating to them, and that it is the indispensable duty of the patrol to carry them into execution ; but they are not at liberty to overleap the bounds which these laws prescribe to them, and, particularly, where such a stretch of power is productive of injury or inconvenience to the worthy citizens of the State. And although public policy might in cases of great and urgent necessity and alarm, excuse an act of illegal violence, yet, when such a state of things does not exist, the powers vested in the patrol are amply sufficient for all the purposes intended by it.
The Act of 1740,[2] (2 Brev. 240, P. L. 172,) authorizes the correction *170 of any negro caught without his owner’s plantation, unless he has a ticket from his *master, &c., (authorizing his absence) a sealed letter, or a white person in company with him. The patrol was not authorized by this act to correct the slaves assembled; because there were white persons with them. The Act of 18Q0,[1] (2 Brev. 254, 2 Faust. 351,) provides that all assemblies and congregations of slaves, free neg’roes, mulattoes and mustizoes, whether composed of all, or any of those descriptions of persons, and of a proportion of white persons met in a confined and secret place, or with the gates and doors barred, bolted or locked, so as to prevent the free ingress and egress to and from the same, shall be deemed an unlawful meeting, and authorizes the civil and military officers and the patrol to do whatever may be necessary to disperse them, and inflict on them such reasonable and corporeal punishment as they may think proper, not exceeding twenty lashes ; and they are even prohibited, also, from meeting in company with white persons before the rising, and after the going down of the sun. A subsequent Act, in 1803,[2] (2 Brev. 260, sec. 126, 2 Faust, 505,) reciting, that certain religious societies had petitioned for a repeal of a part of the above clause, provides, that it should not thereafter be lawful for any person or persons to break into any place of meeting, wherein should be assembled the members of any religious society, at any time before nine o’clock in the evening, provided a majority of them should be white persons ; or otherwise to disturb their devotions, unless by a warrant from a magistrate, if one resides within three miles.
Now the circumstances, on which an assembly of negroes, by the Act of 1800, are authorized to be dispersed, did not exist. To authorize it, the place of meeting must be private or confined, or the meeting itself in the night time. In the case under consideration, the meeting was at a public meeting-house, the doors of which were open, and in the midst of day.
But it was strongly argued, on the trial below, that the act of 1803, gave that power, where a majority of the congregation consisted of persons of color. That act was intended to remedy a supposed severity which *Srew' out the Net of 1800, and was founded on the well-known custom of the Methodist Society to hold their class meetings with closed doors, on some occasions, after night; and it would, indeed, be a strange anomaly in legislation to legalize an evil, which it was their avowed intention to prevent. The act itself warrants no such construction.
It follows, therefore, that the prosecution against the plaintiff, so far from being devoid of probable cause, and fraught with malice, was well founded ; and I have no hesitation in saying that the plaintiff ought to have been convicted, if the grand jury had found the bill.
The preceding observations apply to the two first grounds of the motion ;[3] and it is sufficient further to remark, concerning them, that in support of the action, both malice and want of probable cause must appear; and although the former will generally be implied from the latter, yet, it does not necessarily follow; and the presumption arising from it, may be rebutted by other circumstances; and I think this case furnishes a *171 happy illustration of the position. The congregation had suffered a series, of insults from a particular class of persons assuming to themselves the right of disturbing their assemblies, and upon being advised that they were amenable to the laws, the plaintiff, the head of the little flock, reluctantly consented to take upon himself the office of prosecutor; the object of which was to shield them from further molestation. And in this spirit, he applied to a neighboring magistrate, and stated to him the case as it really was; — “ nothing extenuating, nor setting down aught in malice and the magistrate, in the best exercise of his judgment, was of opinion, that it furnished sufficient cause of offence to authorize the prosecution, and therefore issued his warrant. Even admitting, therefore, that there did exist sufficient evidence of probable cause, I am clearly of opinion, that the presumption of malice, arising from a want of probable cause, is rebutted by the facts, going to show, that nothing of malice entered into the prosecution, on the part of the defendant.
Clarice, solicitor for the motion; Pearson, contra.
*The third ground is superceded by this view of the case, The motion is granted.
Coicock, Nott, Cheves and Gantt, JJ., concurred.

 2 Bail. 151; 2 Rice’s Dig. 245.

 7 Stat. 398. § 3.

 7 Stat. 440, § 1.

 7 Stat. 448.

 3 Strob. 519, 560.